# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AVERY MIGUEL PERRY, SR.,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 22-CV-4012** |
| | : | |
| **OFFICER MELANIE FADDIS,** *et al.*, | : | |
| *Defendants* | : | |

# M E M O R A N D U M

NITZA QUIÑONES ALEJANDRO, J.                                                                 NOVEMBER 30, 2022

      Currently, before the Court is a Complaint filed by Plaintiff Avery Miguel Perry, Sr., a self-represented litigant, against three Officers of the Lower Providence Police Department — Officer Melanie Faddis, Officer Andrew Millard and Sergeant Matthew Kuhnert — and the "Lower Providence EMS Paramedics." Perry raises claims pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") based on a traffic stop that occurred two days before he filed his Complaint. Perry seeks to proceed *in forma pauperis*. For the following reasons, Perry's motion for leave to proceed *in forma pauperis* is granted, his Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## I.     FACTUAL ALLEGATIONS

      Perry alleges that on October 4, 2022, he went for a drive at night because he "was having a very difficult and emotional day." (ECF No. 2-1 at 1.)[1] At some point during his drive, Perry was pulled over by Officer Millard. (*Id.*) When Perry inquired as to the reason for the stop, Officer Millard told Perry he was pulled over "for some sort of lack of insurance/tag violation." (*Id.*)

---

[1]     The Complaint is comprised of a completed form complaint and a recitation of facts attached to the form, which provides the factual basis for Perry's claims. (ECF Nos. 2 & 2-1.) The Court adopts the pagination supplied by the CM/ECF docketing system.

Officer Millard asked Perry for his "information." (*Id.*) Perry is unclear about what documents, if any, he provided to Officer Millard. However, Perry alleges that he had his fiancé on the phone via "FaceTime," and that his fiancé represented that she had "any/all paperwork in regards to [the] vehicle and [its] history and that any supposed incorrect record(s) they had available had indeed previously been rectified and that the insurance is indeed up to date and had been for quite some time." (*Id.*)

Perry provided Officer Millard with his name and birthdate and informed the officer that he "suffer[s] from mental health disabilities." (*Id.*) At some point, Officer Faddis approached the vehicle with a flashlight and asked Perry some questions, to which he responded that he "had already given any/all current available information to the initial Officer" and that he "suffer[s] from mental health." (*Id.* at 1-2.) Officer Faddis responded that she had not spoken to the "initial Officer" and asked whether Perry was in possession of drugs or firearms, to which Perry responded in the negative. (*Id.* at 2.)

With Perry's fiancé still on the phone, Officers Millard and Faddis asked Perry to exit the vehicle so they could talk, and Perry did so. (*Id.*) Officer Millard allegedly stated that "there was a discrepancy in regards to the insurance of the vehicle and that [Perry's] license was suspended." (*Id.*) Perry claims that he and his fiancé objected and attempted to "explain the circumstances and provide the correct, up to date information & records" but that Officer Faddis allegedly prevented him from doing so by "scream[ing]" at him, "'Avery! Avery! Stop talking. It's suspended and out of date so just stop.'" (*Id.*)

Perry alleges that he was feeling "overwhelmed, disrespected, slighted, anxious and battling a P.T.S.D triggering event" so he attempted to approach Sergeant Kuhnert, the supervisory officer on the scene, to plead his case. (*Id.*) Sergeant Kuhnert allegedly "scream[ed]" at Perry to

2

"get back," which Perry alleges caused him to stand "confused, perplexed and [in an] anxiety induced stupor." (*Id.*) Perry continued speaking to Sergeant Kuhnert, explaining that he and his fiancé sought "to present the vindicating information but that [he] could not emotionally, mentally and physical[ly] operate under [the] intimidating, frightening and abusive methods of supposed 'Administration of Justice,'" to which he claims Sergeant Kuhnert responded "in a mocking tone" by asking whether he should call the paramedics. (*Id.*)

Perry responded in the affirmative, claimed that his rights were being violated and he "felt threatened and intimidated," he "didn't appreciate this behavior," and he "elaborated further details of [his] private and protected mental health information." (*Id.*) Officer Faddis responded that Perry's rights were not being violated, allegedly coupled with a "sly snicker," and Sergeant Kuhnert informed Perry that his vehicle would be towed if he could not find someone to pick it up. (*Id.*) Perry then explained family and financial difficulties he was experiencing and "exclaimed" that his cell phone was running low on battery power with his fiancé "still present on the phone and still verbally and with documentation attempt[ing] to produce vindicating evidence" but he was allegedly "met with the most adverse, opposite, discriminatory actions." (*Id*. at 2-3.) Perry's cell phone lost power and although Sergeant Kuhnert offered to charge the phone in the police vehicle for Perry, Perry declined the offer because he preferred to charge the phone himself "under police supervision." (*Id.* at 3.) He also "continued to enlighten" Sergeant Kuhnert about his personal family circumstances. (*Id.*)

When the paramedics arrived, Perry requested that he be able to discuss his "private and protected by hippa [sic] mental/emotional health disabilities and relative information" away from the "eavesdropping" officers, but was told no. (*Id.*) Perry alleges that the paramedics repeatedly screamed at him to remove his hands from his pockets, to which he responded that he was not a

threat and asked to have an officer search him. (*Id.*) Officer Millard conduced a "pat down" search of Perry, which revealed nothing but Perry's cell phone. (*Id.*) According to Perry, the paramedics refused to provide their names or writing implements. (*Id.* at 3-4.) Perry refused to leave with the paramedics because he did not feel safe with them and requested an "alternative provider" from Sergeant Kuhnert. (*Id.* at 4.) Perry claims he was screamed at and that he was told the paramedics who were present were his only option. (*Id.*) Ultimately, the paramedics departed, and Perry finally permitted Sergeant Kuhnert to charge his phone at the Sergeant's behest. (*Id.* at 5.)

It appears a tow truck arrived shortly thereafter and towed Perry's vehicle before Perry had the opportunity to call his fiancé to see if she could pick him up. (*Id.*) Perry noticed that the license plate had been removed from the car and was told that officers were "taking the key, plate [and] issuing a traffic violation of some sort."[2] (*Id.*) Officer Millard offered to give Perry a ride home. (*Id.*) Perry reluctantly obliged and was patted down by Officer Millard before he got in the car. (*Id.*) Within an hour of Perry's arrival back home, his fiancé sent proof of insurance and unspecified "vindicating paperwork" to the police station. (*Id.*) Perry claims that it was "depressing to be treated in such a degrading, disrespectful, unethical, immoral, unappreciated, violating, intimidating, aggressive and recklessly abusive" manner. (*Id.*)

---

[2] According to the Complaint, Perry and his fiancé ultimately recovered the license plate on October 6, 2022, at 12:30 p.m. (ECF No. 2-1 at 7.) Perry was charged in Traffic Court with two summary offenses as a result of the events of October 4, 2022, namely: (1) driving while his operating privilege was suspended or revoked, in violation of 75 Pa. Cons. Stat. § 1543(a); and (2) operating a vehicle following suspension of registration in violation of 75 Pa. Cons. Stat. § 1371(a). *See Commonwealth v. Perry*, MJ-38120-TR-0002007-2022 & MJ-38120-TR-0002008-2002. He pled not guilty and is set for trial on December 13, 2022. This is not the first time Perry has been charged with driving while his license was suspended or revoked. *See Commonwealth v. Perry*, MJ-38111-TR-0000357-2020.

Two days after these events, Perry filed the instant Complaint claiming that his constitutional rights and rights under the ADA were infringed during these events.[3] He seeks damages. (ECF No. 2 at 5.)

## II.   STANDARD OF REVIEW

The Court grants Perry leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case. Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court is required to dismiss a complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Perry is proceeding *pro se*, this Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[3] To the extent Perry sought to bring claims under the Health Insurance Portability and Accountability Act ("HIPAA"), any such claims are dismissed because HIPAA does not provide for a private cause of action. *Beckett v. Grant*, No. 19-3717, 2022 WL 485221, at *3 (3d Cir. Feb. 17, 2022) (*per curiam*) ("HIPAA does not provide a private cause of action.") (citing *Meadows v. United Servs.*, 963 F.3d 240, 244 (2d Cir. 2020)); *Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010) (same); *Webb v. Smart Document Solutions, LLC,* 499 F.3d 1078, 1082 (9th Cir. 2007) (same); *Acara v. Banks,* 470 F.3d 569, 571-72 (5th Cir. 2006) (same).

### III. DISCUSSION

#### A. *Section 1983 Claims*

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Perry's Complaint is best construed as raising claims under the Fourth Amendment, the First Amendment, and the Fourteenth Amendment in connection with the events of October 4, 2022.[4]

##### 1. *Fourth Amendment Claim*s[5]

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well-settled that the temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). However, where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment. *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir.

---

[4] The Court understands Perry to be pursuing § 1983 claims only against the Officers. To the extent Perry also intended to raise § 1983 claims against the paramedics, either in an individual or official capacity or as an entity, those claims are dismissed as inadequately pled and, thus, not plausible.

[5] The Fourth Amendment applies to pretrial detentions of liberty by law enforcement. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). Therefore, the Fourth Amendment governs the analysis of Perry's claims related to his detention by police on October 4th. *Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" pursuant to which claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which that claim falls, rather than under the Due Process Clause).

1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."); *see also Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020) (traffic stop was lawful where "[u]nder the totality of the circumstances of this case, Deputy Mehrer drew an entirely reasonable inference that Glover was driving while his license was revoked").

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' — to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* (internal citations omitted). "Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355; *see also* 75 Pa. Cons. Stat. § 6308(b). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355. The length of any additional investigation and detention after a traffic stop must be supported by reasonable suspicion based on the facts and circumstances confronting the officer. *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022).

According to the Complaint, Perry was pulled over "for some sort of lack of insurance/tag violation." (ECF No. 2-1 at 1.) As noted above, a violation of traffic laws observed by an officer is a permissible reason for a traffic stop. Perry does not allege that the officers had no basis for perceiving a traffic violation at the time of the stop.[6] Rather, the Court understands Perry to be claiming that, following the stop, he was able to prove that the insurance for the vehicle complied

---

[6] The precise violation for which Perry was pulled over is unclear. The Complaint suggests there was an issue with the vehicle's registration or that the officers at least perceived an issue with the registration, but does not provide additional details.

7

with the relevant laws based on paperwork in possession of his fiancé, who was not present on the scene but was available by phone. (*See id.* (stating that Perry's fiancé had "any/all paperwork in regards to [the] vehicle and [its] history and that any supposed incorrect record(s) they had available had indeed previously been rectified and that the insurance is indeed up to date and had been for quite some time".)). Perry is less specific about whether the registration for the car complied with relevant traffic laws, although he alludes to unspecified "vindicating information." (*Id.* at 2.) Regardless, any paperwork possessed by Perry's fiancé was not available to officers until after Perry had been pulled over. As pled, the Complaint does not support a plausible inference that it would have been clear to an officer that the car was compliant with the relevant traffic laws *at the time of the stop*. Accordingly, the Complaint does not plead a plausible basis for concluding that the initial traffic stop violated the Fourth Amendment. *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

    Turning to the duration of the stop, the Complaint makes clear that in the course of the initial stop, the officers learned that Perry's license had been suspended. Although Perry alleges that his fiancé had documents related to the vehicle, and that he repeatedly attempted to explain as much to the officers on the scene, he never alleges that he had a valid license or that the officers were incorrect when they claimed he was driving without a valid license. Since the only reasonable inference that can be drawn from the Complaint is that the officers believed Perry was driving without a valid license, it was reasonable for them to further detain Perry until plans could be made

for the vehicle because Perry could not lawfully operate the vehicle.[7] *See Commonwealth v. Jackson*, 273 A.3d 1033 (Pa. Super. Ct 2022.) (unpublished table disposition), *appeal denied*, 282 A.3d 373 (Pa. 2022) (upon learning that the driver he pulled over for tinted windows had a traffic code violation, lacked a valid license, "Trooper Fleisher had the additional reasonable suspicion that he needed to extend the traffic stop while he investigated whether Appellant or someone else was capable of driving the vehicle"). In sum, Perry's Complaint fails to allege a Fourth Amendment violation based on his detention by police officers on October 4, 2022.[8] *See generally*

---

[7] "Since [the officers] could investigate further, they were also justified in ordering [Perry] out of the car for their own protection during the brief detention required for that investigation." *United States v. Hackett*, 173 F. App'x 164, 165 (3d Cir. 2006) (citing *Moorefield*, 111 F.3d 10, 13-14 (3d Cir. 1997)).

[8] It follows that the Complaint also fails to state a claim based on the towing of Perry's vehicle. Relevant here, Pennsylvania law provides that when a law enforcement officer verifies that a person is operating a motor vehicle while his operative privilege is suspended and/or revoked, "the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent . . . ." 75 Pa. Cons. Stat. Ann. § 6309.2. The Complaint indicates that Perry was given an opportunity to arrange for someone to retrieve the car but that his cell phone could not make calls because it lost battery power and he initially refused to permit a police officer to charge the phone (something that was offered to him) without him being present. Since the Complaint alleges that the officers learned Perry was operating a vehicle while his license was suspended, and since Perry does not allege that he *in fact* had a valid license, it was permissible for them to tow the car pursuant to Pennsylvania law. *See Sheller v. City of Philadelphia*, No. 11-2371, 2012 WL 4754820, at *6 (E.D. Pa. Oct. 5, 2012) (explaining that the language of the statute "provides law enforcement officers with the option to tow based on their determination of the interest of public safety"). Notably, the law provides for a means by which the owner or a lienholder of any vehicle can retrieve the vehicle. 75 Pa. Cons. Stat. § 6309.2(d). To the extent Perry is raising a procedural due process claim based on the towing of his vehicle, he does not explain why these post-deprivation procedures are insufficient to provide any process due. *See Mancini v. Northampton Cty.*, 836 F.3d 308, 315 (3d Cir. 2016) ("Fundamentally, procedural due process requires notice and an opportunity to be heard" in a meaningful time and manner) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *Mawson v. Pittston City Police Dep't*, No. 16-00400, 2017 WL 4324840, at *15 (M.D. Pa. Jan. 20, 2017), *report and recommendation adopted*, No. 16-0400, 2017 WL 4366446 (M.D. Pa. Sept. 28, 2017) (concluding, in the towing context, that "[c]ourts have recognized that a state-law conversion or replevin case provides an adequate post-deprivation remedy in situations of seized property"). Additionally, since the Complaint is vague on what the officers believed the issue was with the car's registration and whether the documentation held by Perry's fiancé addressed that issue, and also fails to allege that inadequate post-deprivation remedies were available to Perry, the Complaint falls short of stating a plausible claim based on the seizure of Perry's license plate. *See Olarte v. Cywinski*, No. 12-632, 2012 WL 3757649, at *6 (M.D. Pa. Aug. 28, 2012) ("We agree with defendant that Pennsylvania law provided plaintiff with adequate post-deprivation remedies [when officer towed her car and sent her license plate to PennDot]. Courts have found that Pennsylvania law provides for

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### 2. First Amendment Claims

Perry also appears to assert a First Amendment claim in connection with the events of October 4, 2022. As best as the Court can discern, the basis for this claim is Perry's allegation that when he and his fiancé attempted to present records related to the vehicle to Officer Millard, Officer Faddis "continuously screamed" at him, "Avery! Avery! Stop talking. It's suspended and out of date so just stop," which Perry contends prevented him from "articulat[ing] in a comprehensible manner." (ECF No. 2-1 at 2.) It appears that Perry is claiming his ability to speak was chilled by Officer Faddis's response. However, he thereafter presented his case to Sergeant Kuhnert by "adamantly profess[ing] that [he and his fiancé] were trying to present vindicating information." (*Id.*)

The Complaint suggests that Perry was not chilled by Officer Faddis's directive that he stop talking since he was shortly thereafter able to present his case to Sergeant Kuhnert.[9] *See Fleck v. Trustees of Univ. of Pennsylvania*, 995 F. Supp. 2d 390, 406 (E.D. Pa. 2014) ("When a party shows no change in behavior, he can show no chilling of his First Amendment right to free speech."). In any event, the Complaint does not support an inference that the police took any adverse action against Perry *because of* his speech. *See Funayama v. City of Philadelphia*, No. 13-2667, 2015 WL 1608437, at *3 (E.D. Pa. Apr. 10, 2015) ("When a plaintiff alleges that police conduct had a chilling effect, plaintiff must establish the elements of a First Amendment retaliation

---

such adequate remedies through replevin and conversion claims."). As noted above, Perry was able to recover the license plate within two days. *See supra* n. 2.

[9] The Complaint also fails to support an inference that Perry could have established he had a valid license, as discussed further above.

claim."); *see also Est. of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (to establish a retaliation claim, a plaintiff must show: "(1) that [he or she] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation"). Accordingly, Perry has not alleged a plausible basis for a First Amendment claim.

### 3. Equal Protection Claims

The Court also understands Perry to be raising an Equal Protection claim based on his allegation that he was discriminated against "based on disability(ies)." (ECF No. 2 at 5.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiffs pursuing an equal protection claim must allege that they were purposefully discriminated against, in that "they received different treatment from that received by other individuals *similarly situated*." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (emphasis in original); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985) (a litigant must show "intentional or purposeful discrimination" to establish an equal protection violation). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Perry has not stated a plausible equal protection claim because he has not alleged that he was treated differently from similarly situated individuals. Nor has he alleged facts from which it could be plausibly inferred that his treatment was a result of intentional discrimination due to a disability or disabilities. Additionally, to the extent Perry alleges that he was racially profiled, this allegation is entirely conclusory and wholly unsupported by any facts in the Complaint,. *See*

11

*Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 34 (3d Cir. 2013) (*per curiam*) (pleading was properly dismissed where "the amended complaint assert[ed] blanket, non-specific allegations that Santos was treated differently because of his race and/or gender" and did not include "specific allegations illustrating how Santos was treated differently than those similarly situated"). Accordingly, any equal protection claims pleaded are not plausible.

### B. ADA Claims

Perry also asserts claims under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[10] 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Perry must allege that: "'(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018)). To allege that he is a "qualified individual with a disability," Perry must allege that he has a "disability" which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing

---

[10] The term "public entity" is defined by the ADA as "any State or local government" as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Since Title II of the ADA does not provide for individual liability, the Court construes Perry's claims as raised only against the Officers in their official capacities and the Lower Providence EMS Paramedics as an entity. *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. at § 12102(2)(A). The ADA can apply to police conduct in the context of an arrest. *Haberle*, 885 F.3d at 180 ("[W]e believe that the ADA can indeed apply to police conduct during an arrest.").

Monetary damages, such as those sought by Perry, are not available under the ADA absent a showing of intentional discrimination. *Id.* at 181. "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated and (2) failure to act despite that knowledge." *Id.* (internal citation and ellipses deleted). A plaintiff can plead deliberate indifference in two ways: "first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs,' or, second, by alleging facts indicating that [plaintiff] could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Id.* (internal quotation marks and ellipses deleted).

Although Perry vaguely alludes to "mental health" and "mental/emotional health" disabilities he allegedly shared with the officers and paramedics, (ECF No. 2-1 at 2-3), he does not clearly identify these disabilities or describe how they impact any of his major life activities. Absent such clearer allegations, Perry falls short of alleging a disability under the ADA. But even assuming he alleged a disability, Perry has failed to allege that those alleged disabilities were the "'but for' cause of the deprivation or harm he suffered," *Haberle*, 885 F.3d at 179, or that he was intentionally discriminated against because of those disabilities. Indeed, there are no allegations in the Complaint suggesting a pattern of past occurrences like Perry's, nor are there allegations supporting a plausible inference that the relevant local entities faced a great and obvious risk of

13

harm to disabled individuals such as Perry to which they failed to respond. Furthermore, with regard to the claim against the paramedics, it was Perry's choice not to pursue any care, so any exclusion from services was based on his own decision. *See Douris v. New Jersey*, 500 F. App'x 98, 101 (3d Cir. 2012) (*per curiam*) (affirming dismissal of plaintiff's claims where plaintiff "was not excluded from the courthouse; rather, he chose not to enter"). In sum, Perry's allegations about disability discrimination are conclusory and fall woefully short of establishing deliberate indifference. *See Evans v. President of Thomas Jefferson Univ. Hosp.*, No. 22-1371, 2022 WL 2916685, at *5 (E.D. Pa. July 25, 2022) (dismissing complaint where plaintiff did "not allege whether or how his alleged disability impacts his daily living, and his conclusory allegations that he was subject to discrimination because of his disability are not sufficient to state a plausible claim").

## IV.     CONCLUSION

For the foregoing reasons, this Court will grant Perry leave to proceed *in forma pauperis*, and dismiss his Complaint for failure to state a claim. In light of Perry's *pro se* status, he will be given an opportunity to file an amended complaint in the event he can cure the defects in his claims set forth above. An Order follows, which provides further instruction as to amendment.

*NITZA QUIÑONES ALEJANDRO, J.*